IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION

| | |
|---|---|
| **OSCAR BREWER; DON MANGEN; JASON WHITE; BLAKE WHITSON; STEVEN STAFFORD**, all of whom were partners in JMD Coastal Entertainment, Inc., dba Martini's,<br><br>*Plaintiffs*,<br><br>v.<br><br>**THE CITY OF BILOXI, MISSISSIPPI; ANDREW GILLICH**, in his official capacity as Mayor of the City of Biloxi; **JOHN MILLER**, in his official capacity as Chief of Police of the City of Biloxi; and **BRAD PATANO**, principal at MPENG Holdings, LLC,<br><br>*Defendants*. | Civil No. 1:25cv193 LG-BWR |

### COMPLAINT

### JURY TRIAL REQUESTED

### NATURE OF THE CASE

1. This action is brought pursuant to 42 U.S.C. §1983 and the U.S. Constitution. The City of Biloxi has a long history of racial discrimination against African Americans going back to the discrimination that triggered the Biloxi beach wade–ins civil rights protests of the late 1950s

1

and early 1960s. Unfortunately, similar discriminatory practices are still alive and well today. The City of Biloxi forced the owners of Martini's restaurant out of business due to its African American clientele. Plaintiffs seek compensatory and punitive damages.

## JURISDICTION AND VENUE

2.  The jurisdiction of this Court is invoked pursuant to 28 U.S.C. § 1331 and 42 U.S.C. § 1983.

3.  The supplemental jurisdiction of this Court to hear Mississippi tort and contractual claims against the non–governmental defendant Brad Patano is invoked pursuant to 28 U.S.C. §1367.

4.  Venue is appropriate under 28 U.S.C. §1391.

## PLAINTIFFS

5.  Plaintiff Oscar Brewer ("Brewer") is an adult resident of the State of Mississippi. He was a partner of the now defunct JMD Coastal Entertainment, Inc., dba Martini's ("Martini's").

6.  Plaintiff Don Mangen ("Mangen") is an adult resident of the State of Mississippi. He was a partner of the now defunct JMD Coastal Entertainment, Inc., dba Martini's.

7.  Plaintiff Jason White ("White") is an adult resident of the State of Louisiana. He was a partner of the now defunct JMD Coastal Entertainment, Inc., dba Martini's.

8.  Plaintiff Blake Whitson ("Whitson") is an adult resident of the State of Mississippi. He was a partner of the now defunct JMD Coastal Entertainment, Inc., dba Martini's.

9.  Plaintiff Steven Stafford ("Stafford") is an adult resident of the State of Mississippi. He was the managing partner of the now defunct JMD Coastal Entertainment, Inc., dba Martini's.

DEFENDANTS

10.     Defendant Biloxi Mississippi ("Biloxi") is a municipal governmental entity whose policies, practices, and customs were the moving force behind the constitutional violations described in this complaint.

11.     Defendant Andrew Gillich ("Gillich") is the Mayor of the City of Biloxi. He resides in the district and this division. Defendant Gillich is the chief executive officer of the City of Biloxi pursuant to Mississippi law. Defendant Gillich is the final policymaker for the City of Biloxi with respect to the policies, practices, and customs challenged in this complaint.

12.     Defendant John Miller ("Miller") is the Chief of the Biloxi Police Department. He resides in the district and this division. Defendant Miller is the chief law enforcement officer for the City of Biloxi pursuant to Mississippi law. Defendant Miller is the final policymaker for the City of Biloxi with respect to the participation of Biloxi police officers in implementing the policies, practices, and customs challenged in this complaint.

13.     Defendant Brad Patano ("Patano") is a principal at MPENG Holdings, LLC, the owner and landlord of the property the plaintiffs were leasing and using to doing business as Martini's. He resides in the district and this division. Upon information and belief, defendant Patano conspired with the other defendants to formulate the policies, practices, and customs challenged in this complaint because he did not want African American clientele on his property, and because he sought to benefit from the plaintiffs' improvements and renovations to his property were they to close, which they now have.

14.     The governmental defendants undertook all of the acts set forth herein under color of state law and all acts can be fairly attributed to the City of Biloxi. Each named governmental defendant is a "policymaker" with respect to the policies, practices, and customs challenged in this

lawsuit. At various times described in this complaint, all the named defendants acted jointly with one another to deprive the plaintiffs of their rights protected by the U.S. Constitution. In so doing, they acted under color of state law as forbidden in 42 U.S.C. §1983.

FACTUAL ALLEGATIONS

15.     In the fall of 2020, plaintiffs Stafford and Mangen began planning and preparing the location that would become Martini's. Plaintiffs initially went to the City of Biloxi to discuss their plans because behind the site they wanted there are residential homes where two elderly women live. Plaintiffs were told by various City officials including Mayor Gillich, Chief of Police Miller, and Jerry Creel (Director and Building Official for the City of Biloxi) that the nearby residential homes would not be an issue since the site they were planning to use was in the newly formed entertainment district. The only restriction they were given was that there was to be no loud outdoor music after 10:00 PM unless they obtained a special events permit. Martini's abided by this policy: Martini's was open outside as long as the bar was open, sometimes as late as 4:00 AM, but they never had any bands playing outside playing music past 10:00 PM. People went outside to smoke, and they had small speakers connected to the inside jukebox which we were not very loud. They did have bands outside on occasion, but never past 10:00 PM.[1]

16.     In the Spring of 2021, while Martini's was under construction, the City of Biloxi approved the plaintiffs' plans every step of the way and with no reservations.  The plaintiffs had many discussions about parking with City officials including Mayor Gillich and Chief of Police Miller. They were told multiple times that guests could park under the interstate a block away as it is an all–public domain parking area.

---

[1] To plaintiffs' knowledge, they never got a complaint about noise from the outside smoking area. They did get noise complaints, but it was about cars playing loud music on nearby streets and that was completely beyond their control. See paragraph 22 infra.

17. In June of 2021, plaintiffs opened Martini's for business and had a ribbon cutting ceremony with the Chamber of Commerce and Mayor Gillich. Martini's hosted many private events for various City functions throughout that first year and there were no issues at all with parking or noise complaints.

18. In the Fall of 2022, late–night business at Martini's began to increase and they started having more and more African American clientele. That is when the plaintiffs started receiving "push–back" from the City of Biloxi. Plaintiffs allege that this push–back occurred because Martini's was located in a predominantly white area of downtown Biloxi and the defendants did not want a large influx of African Americans there. Despite this push–back, plaintiffs met with Chief of Police Miller on numerous occasions from November of 2022 through February of 2023 to see if there was anything they should do differently. Chief of Police Miller said that all was fine and for plaintiffs to keep doing what they were doing. Plaintiffs asked Chief of Police Miller for more of a patrol presence during this time, but he said that he was unable to allocate any more patrols because the Biloxi police were shorthanded.

19. On March 19, 2022, at approximately 3:00 AM, a 19 year–old assailant shot a man and a woman across the street from Martini's in the Beau Rivage casino and hotel parking lot. The news media and the City of Biloxi officials wrongly placed the shooting at Martini's. However, the assailant had never been in Martini's because they strictly enforced Mississippi's 21–year–old age restriction drinking laws. It was later learned that the assailant had just come from a comedy show at the Gulf Coast coliseum.

20. On February 26, 2023, a second shooting incident occurred and Martini's was again wrongly blamed for it by the news media and City of Biloxi officials. This time, two gentlemen

were in an altercation about a block away from Martini's on Bohn Street and one of them shot the other. Neither of the two was ever in Martini's that evening.

21. Beginning in the Fall of 2022, the plaintiffs started calling the Biloxi police numerous times for assistance for patrons fighting, but when Biloxi police officers did show up they said would not arrest anyone because they did not want the liability of arresting individuals.

22. Also in the Fall of 2022, the elderly women who occupy the homes behind Martini's started calling the Biloxi police repeatedly for noise from nearby cars and for parking violations. However, this had nothing to do with Martini's because the plaintiffs had no control over music that is played on a public street in a private car.

23. Beginning in approximately October of 2022, the plaintiffs started hiring off duty police officers to assist with security at Martini's. These officers were from another jurisdiction. They had to be, because Biloxi police officers told plaintiffs that they are not allowed to do off duty security work in restaurants and bars in the City of Biloxi, although curiously they said they are allowed to work at the baseball stadium across the street from Martini's during all the games.

24. In March of 2023, plaintiffs were served with a lawsuit to compel them to close at midnight, to close their courtyard, and to have no DJ. See, *City of Biloxi, ex rel., John Miller v. JMD Coastal Entertainment, Inc.,* (Harrison County Chancery Court, Cause No. 24CH2:23–cv–00268–JS)(available on PACER). Plaintiffs essentially agreed to these demands. With the exception of Black Spring Break week, they closed Martini's at 1:30 AM for the entire month of April 2023. They did this because they knew if they did not accept these terms the City of Biloxi would have shut them down completely for 90 days.

25. Plaintiffs learned that, as Martini's clientele became more and more African American, their landlord Brad Patano went to City of Biloxi officials to ask for help to get out of

6

his lease with the plaintiffs because he said they were hurting the image of the property. The City of Biloxi attorney reportedly made a comment to plaintiffs' attorneys that defendant Patano didn't want Martini's to be "Black Spring Break every weekend." Defendant Patano also reportedly stated that his business insurance went up 30 percent due to Martini's' new operating times with the African American clientele, which plaintiffs know cannot be true because their operating times were the same from day one when they first opened. Plaintiffs have reason to believe that their defendant Patano was effective in his pleas to the City of Biloxi because he repeatedly told them during the planning stages of Martini's that he was "in good with" the City of Biloxi, and they would do whatever he wants because "they owed him."

26. City of Biloxi Councilman Robert Demming stated to plaintiffs that Mayor Gillich went to each council member to try and pass an ordinance to close Martini's at midnight. The council did not agree as that would have been selective discrimination and would not stand up in court.

27. Failing in his attempt to shut down Martini's early by direct ordinance, Mayor Gillich resorted to indirect means to force Martini's to close early. When Martini's resumed its normal business hours after the lawsuit injunction, the City of Biloxi took it upon itself to put up signs in the parking area under the interstate that stated there was to be no parking after 10:00 PM and that all cars parked there after 10:00 PM would be towed. This was the only known parking lot in the City with these restrictions. These restrictions were clearly aimed at shutting down Martini's early because they were selectively enforced. The 10:00 PM restrictions were not enforced during baseball games when the fans parked there.

28. Biloxi police also came in Martini's while people were dining and told them they were going to start towing after 10:00 PM which had the predictable effect of running off those

patrons. It was this practice and others like them that finally forced Martini's out of business in early October 2024.

29. Repeatedly, when the plaintiffs asked for help from the City of Biloxi police they refused, citing manpower shortages. Curiously, there was a shooting in downtown Ocean Springs, Mississippi on May 6, 2023, and after that incident Biloxi police stepped up City patrolling around Martini's. Moreover, the Biloxi police had previously told plaintiffs if they had any issues to use the non–emergency number to report it and not tie up the 911 line. But, after the Ocean Springs shooting, Biloxi police told plaintiffs to use 911 so they could track their response times. That Ocean Springs shooting had nothing to do with Martini's and they provided enhanced police protection for it, so why did they ignore requests to step up police protection for Martini's?

30. In meetings with Police Chief Miller, plaintiffs told him that they were going to frisk and wand people just like the Beau Rivage casino and hotel or Airlines do, and if their off duty police officers find weapons they asked him how he wanted that handled. He stated that he didn't want the weapons and shrugged his shoulders.

31. It is noteworthy that no other law enforcement entity in Mississippi had problems with Martini's. At no time while they were open for business did plaintiffs ever receive any complaints whatsoever from the Mississippi Alcohol and Beverage Commission (ABC), not for serving liquor to underage customers, not for any reason whatsoever.

32. These discriminatory practices by the defendants were racially motivated. We know this because the crowd and noise levels were approximately the same the first year Martini's was in business; the only thing that changed was that their clientele became increasingly more African American. Martini's African American customer base showed up in the largest numbers at around 2:00 AM. The hours the City of Biloxi set for Martini's to close was 1:30 AM. None of the other

8

restaurant and entertainment venues in the City of Biloxi with predominantly white clientele are treated like this. The City of Biloxi has a long and documented history of discrimination against African Americans and these policies plaintiffs are challenging are indicative that this racial discrimination persists.

VIOLATIONS

COUNT ONE

33.     Plaintiffs are bringing a claim under 42 U.S.C. §1983 (1994). §1983 provides that,

> [A] person who, under color of any statute, ordinance, regulation, custom, or usage ... subjects or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privilege, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law or other proper suit. 42 U.S.C. §1983 (1994).

The two essential elements of a §1983 claim are: (1) the conduct complained of was committed by a person acting under the color of state law; and (2) this conduct deprived a person of rights, privileges, or immunities secured by the Constitution or laws of the United States. *Barrett v. Miller*, 599 So.2d 559, 563 (Miss.1992).

34.     The constitutional rights of plaintiffs that have been violated are very straightforward and easy to show. The Fourteenth Amendment of the U.S. Constitution states in relevant part: "No State shall . . . deny to any person within its jurisdiction the equal protection of the laws." This language is known as the Equal Protection Clause. It mandates that state and local governments treat all similarly situated persons alike, and it broadly restricts offensive discrimination against any individual or group. Defendants have repeatedly violated the Equal Protection rights of the plaintiffs. The restaurant owner plaintiffs may not be African Americans (all of them are Caucasian) but if doing business with African Americans caused the City of Biloxi to force them out of business African Americans are clearly suffering because of these policies,

and all the plaintiffs should be compensated.

35. The governmental defendants have repeatedly violated plaintiffs' constitutional rights through its discriminatory policies and practices, and that is a well–established way to prove §1983 claims versus municipalities and their officials. See, *Monell v. Department of Social Services of the City of New York*, 436 U.S. 658 (1978). This landmark Supreme Court case established that local governments, including municipalities, can be held liable under §1983 for their own unconstitutional policies or customs. See, *Pembaur v. City of Cincinnati*, 475 U.S. 469 (1986). In this case, the Supreme Court held that even a single decision by a municipal policymaker can be sufficient to create municipal liability under §1983 if that decision represents official municipal policy. Clearly, in the case at bar there were multiple discriminatory policies by the governmental defendants. See also, *Thibodeaux v. Square D Company*, 960 F.2d 239 (1992). In this Fifth Circuit case, the Court held that for a municipality to be liable under §1983, a plaintiff must establish that the unconstitutional conduct resulted from a municipal policy or custom. This case emphasizes the importance of proving a direct causal link between the municipality's policy or custom and the alleged constitutional violation. Plaintiffs aver that the causal chain in this case at bar should be obvious; they believe they have pled a plausible case of racially discriminatory practices and policies with specificity. Essentially, the defendants' discriminatory practices against Martini's were twofold. First, the Biloxi City Police did not provide adequate law enforcement to Martini's because of its African American customer base which created a raucous environment that drove customers away. The racist trope that African American customers could not enjoy a peaceful nightlife because they are inherently unruly and lawless became a self–fulfilling prophecy due to defendants' discriminatory law enforcement policies and practices. Secondly, defendants did not want African American customers at Martini's or downtown Biloxi anyway and undertook

systematic policies to force Martini's out of business. Plaintiff Stafford has had similar restaurants with African American customer bases in Mobile, Alabama and he did not have this problem there. Predominantly white customer base restaurants in Biloxi do not have this problem. Clearly defendants' policies violated the Equal Protection clause and discriminated against Martini's due to its African American customer base.

## COUNT TWO

36. Plaintiffs allege that defendant Patano has conspired with the governmental defendants to deprive plaintiffs of their constitutional rights under color of law and is thus jointly and severally liable as are all the defendants for damages under 42 U.S.C. §1983 (1994). However, plaintiffs also allege that defendant Patano has committed tortious interference with a business or contractual relationship which is a tort. Plaintiffs allege that defendant Patano is also liable to them for not fulfilling the terms of their lease (see, Exhibit 1).

## DAMAGES

37. Martini's was a flourishing venue before it was forced out of business by the defendants' discriminatory policies. Plaintiff Stafford is a 30 year veteran in the food and service industry and this Martini's was one in a long line of successful Martini's venues. Plaintiff Stafford expects to show through his own expert testimony, tax returns (see, Exhibit 2), and careful bookkeeping (see, Exhibits 3, 4) that the damages suffered by him and his partners are substantial.

38. The total loss of initial investment is approximately $750,000.

39. Martini's lease had 17 years remaining on its 20 year term when the defendants forced them out of business. The net income for the inside venue was approximately $100,500 for year 1 and was projected to reach $2.7 million by year 20. Total losses on the inside venue over

the course of the 17 years remaining are estimated to be approximately $20.3 million (see, Exhibit 3).

40. The projected loss of income from the outside venue (which was about to open) is substantial as well. Total losses on the outside venue are estimated to be $10.8 million (see, Exhibit 4).

41. The total amount of compensatory damages demanded is approximately $750,000 + $20.3 million + $10.8 million = $31.9 million.

### RELIEF

42. Wherefore, plaintiffs demand a trial by jury on all claims in this complaint, and upon a verdict in their favor, ask that defendants be assessed compensatory damages in an appropriate amount, as well as punitive damages for those claims for which they are available by law, and that they be awarded costs, attorney's fees, and all other relief to which they are entitled.

Respectfully Submitted, this the 17th day of June 2025.

/s/ Marvin Vining
MARVIN VINING

Marvin Vining, Esq.
MS Bar No. 8535
Counsel for plaintiffs

**MARVIN VINING**
Attorney at Law, LLC
P.O. Box 250
Monticello, MS 39654
Phone: 601–842–2589
marvinvining@mac.com